OPINION
{¶ 1} Appellant, Sarah Driesbaugh, appeals her conviction on one count of aggravated vehicular assault with an alcohol specification, former R.C. 2903.08, driving while under the influence of alcohol, R.C.4511.19(A)(1), and prohibitions under former R.C. 4301.632. We affirm.
 {¶ 2} In the early morning hours of January 29, 2000, Trooper Roger Kuhn of the Ohio State Highway Patrol was parked on the berm of Interstate 76 near the exit for State Route 14, in Portage County. Trooper Kuhn was waiting to meet a tow truck to return a purse that had been left in his patrol car. The headlights of the patrol car were on. As Trooper Kuhn sat in his car, he looked in his mirror and noticed a vehicle approaching from the rear and pulling off to the side of the road. Trooper Kuhn thought the vehicle was the tow truck he was awaiting and started to unbuckle his seat belt. As Trooper Kuhn watched the vehicle approach, he realized it was not going to slow down. Trooper Kuhn braced for the impact as his patrol car was struck violently from behind.
 {¶ 3} After the impact, Trooper Kuhn exited his vehicle and went to check on the driver of the vehicle that had hit him. He noticed that the other driver, later identified as Driesbaugh, was unconscious. Driesbaugh's vehicle was locked so Trooper Kuhn broke out the driver's side window and opened the door. As Trooper Kuhn reached inside the vehicle he noticed a strong odor of alcohol about Driesbaugh. Driesbaugh's eyes were bloodshot and glassy, and she seemed dazed and confused.
 {¶ 4} Trooper Kuhn removed Driesbaugh from her vehicle, handcuffed her, Mirandized her, and placed her in his patrol car. The trooper then called for an ambulance and another officer to come to the scene. Subsequently, the handcuffs were removed from Driesbaugh and both she and Trooper Kuhn were taken to Robinson Memorial Hospital for treatment.
 {¶ 5} Trooper June Clark was dispatched to go to the hospital and interview Driesbaugh. Trooper Clark talked to Driesbaugh who stated that she was twenty years old. Trooper Clark noted the smell of alcohol on appellant. Before asking Driesbaugh further questions, Trooper Clark informed Driesbaugh of her Miranda rights. Driesbaugh then gave a statement to Trooper Clark.
 {¶ 6} Driesbaugh stated that she had had a few drinks at a friend's house and was returning home. She said she was travelling sixty-five miles per hour and the next thing she remembered was hitting the back of the patrol car. Driesbaugh stated that she was wearing her seatbelt at the time of the crash and was not injured.
 {¶ 7} Trooper Clark then asked Driesbaugh questions. In response to these questions, Driesbaugh stated that she did not see the patrol car before she hit it; that she was travelling east bound in the right-hand lane; that she could have been driving on the berm before she hit the patrol car; that she thought she fell asleep; and that she had three or four beers between 10:00 p.m. and 1:30 a.m. Trooper Clark then asked Driesbaugh if she thought she was under the influence of alcohol at the time of the crash. Driesbaugh responded "yes."
 {¶ 8} Driesbaugh was indicted on five counts: aggravated vehicular assault with an alcohol specification, R.C. 2903.08, eff. 7-1-96; driving while under the influence of alcohol, R.C. 4511.19(A)(1); driving with a prohibited blood-alcohol content, R.C. 4511.19(A)(2); assured clear distance, R.C. 4511.21(A)(1); and prohibitions, former R.C. 4301.632.
 {¶ 9} Driesbaugh moved to suppress the results of a blood test taken while she was being treated at Robinson Memorial Hospital. The state stipulated that the blood test was not performed in accordance with Ohio Department of Health standards. The trial court suppressed the blood test results and dismissed the charge of driving with a prohibited blood-alcohol content, R.C. 4511.19(A)(2).
 {¶ 10} Driesbaugh also sought to suppress the statement she gave to Trooper Clark, arguing that she did not knowingly, intelligently, and voluntarily waive her Fifth Amendment right against self-incrimination, or her Sixth Amendment right to counsel. The trial court denied Driesbaugh's motion, finding that Trooper Clark informed Driesbaugh of her Miranda rights, and that Driesbaugh knowingly, intelligently, and voluntarily waived her rights.
 {¶ 11} After a bench trial, the court found Driesbaugh guilty of aggravated vehicular assault with an alcohol specification, driving under the influence and prohibitions. The court nolled the assured clear distance charge.
 {¶ 12} This matter then came on for sentencing. For sentencing purposes, the trial court merged the aggravated vehicular assault with alcohol specification and driving under the influence convictions. The trial court sentenced Driesbaugh to a mandatory term of six months and court costs on the aggravated vehicular assault conviction and court costs on the prohibition conviction. The court also imposed a lifetime revocation of Driesbaugh's driver's license on the alcohol specification.
 {¶ 13} Driesbaugh filed a timely appeal. She also moved this court for an order establishing bail and staying her sentence pending appeal. We granted Driesbaugh's motion in part and ordered her sentence stayed pending appeal conditioned upon her posting a bond of $20,000. We declined to stay the revocation of her driver's license. Driesbaugh was unable to post bond and was remanded to custody.
 {¶ 14} Driesbaugh's appeal presents six assignments of error:
 {¶ 15} "[1.] The trial court erred and abused its discretion in overruling appellant's motion for judgment of acquittal, pursuant to Criminal Rule 29, at the close of the state's and appellant's cases, since there was insufficient evidence presented that appellant operated her motor vehicle while under the influence of alcohol.
 {¶ 16} "[2.] The trial court erred and abused its discretion in convicting appellant of driving under the influence of alcohol, R.C. Section 4511.19(A)(1), and making the specific finding that appellant was operating her motor vehicle while under the influence of alcohol, at the time of committing the offense of aggravated vehicular assault, R.C. Section 2903.08, and such conviction and finding are against the manifest weight of the evidence.
 {¶ 17} "[3.] The trial court erred and abused its discretion in finding appellant guilty of aggravated vehicular assault, R.C. Section2903.08, since the state did not establish beyond a reasonable doubt that there was `serious physical harm' to Trooper Kuhn, pursuant to R.C. Section 2901.01(A)(5)(A)-(E).
 {¶ 18} "[4.] [The] trial court erred in sentencing defendant-appellant to a mandatory prison sentence and to a mandatory permanent driving license revocation for conviction of aggravated vehicular assault, R.C. Section 2903.08, since the court erred and abused its discretion in making the specific finding that the offense was committed while defendant at the time was operating a motor vehicular [sic] while under the influence of alcohol.
 {¶ 19} "[5.] The trial court erred and abuse its discretion in finding that the state established the element of `recklessly' beyond a reasonable doubt and in finding appellant guilty of aggravated vehicular assault, R.C. 2903.28, and such conviction and findings are against the manifest weight of the evidence.
 {¶ 20} "[6.] The trial court erred and abused its discretion in overruling defendant-appellant's motion to suppress the defendant's statement."
 {¶ 21} We will address Driesbaugh's sixth assignment of error first. Her remaining assignments of error challenge her convictions on the basis of the sufficiency of the evidence and the manifest weight of the evidence. Therefore, we will address these assignments of error together.
 {¶ 22} In her sixth assignment of error Driesbaugh argues that the trial court erred in denying her motion to suppress her statement. She contends that she was not informed of her Miranda rights and thus did not knowingly, voluntarily, and intelligently waive her right against self-incrimination and right to counsel. We disagree.
 {¶ 23} When considering an appeal of a ruling on a motion to suppress we review the trial court's findings of fact only for clear error and give due weight to inferences the trial judge drew from the facts. We must accept the trial court's factual determinations when they are supported by competent and credible evidence. We determine only whether the findings of fact were against the manifest weight of the evidence. State v. Bokesch, (Apr. 30, 2002), 11th Dist. No. 2001-P-0026,2002-Ohio-2118, ¶¶ 12-13. We review the trial court's application of law to those facts de novo and independently determine whether the facts meet the appropriate legal standard. Id.
 {¶ 24} In State v. Scott (1980), 61 Ohio St.2d 155, the Supreme Court of Ohio stated:
 {¶ 25} "an express written or oral statement of waiver of the right to remain silent or the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver. The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in Miranda v. Arizona, 384 U.S. 436." Id. at paragraph one of the syllabus.
 {¶ 26} The state must prove by a preponderance of the evidence that any inculpatory statement was voluntarily made. Lego v. Twomey
(1972), 404 U.S. 477, 489. In reaching this decision, the court must determine whether the totality of the circumstances show that the statements are the product of the defendant's free and rational choice.Greenwald v. Wisconsin (1968), 390 U.S. 519, 521.
 {¶ 27} Appellant contends that the trial court should have suppressed her statement because the injuries she suffered in the accident prevented her from knowingly, intelligently, and voluntarily waiving her rights. In support of this argument, Driesbaugh points to evidence that she was found unconscious in her vehicle; that she was dazed and confused immediately following the accident; that she did not recall speaking to Trooper Clark and did not remember signing anything; that Trooper Clark did not explain what was meant by "under the influence of alcohol;" and Trooper Clark's failure to inquire of Driesbaugh or hospital personnel as to the extent of Driesbaugh's injuries. Driesbaugh's argument is unpersuasive.
 {¶ 28} The Supreme Court of Ohio rejected a similar argument inState v. Jenkins (1984), 15 Ohio St.3d 164. In Jenkins the defendant was shot in the chest by police during the course of a bank robbery and suffered a severe spinal cord injury. Upon admission to the hospital, the defendant was in shock, and cold and clammy. His blood pressure was very low due to blood loss. A doctor testified that, at the time of his admission to the hospital the defendant could not understand questions. After the defendant's blood pressure had improved, detectives questioned him about his involvement in the bank robbery. Id. at 165-167.
 {¶ 29} The Supreme Court of Ohio upheld the trial court's denial of the defendant's motion to suppress. Id. at 175. The court noted that the interview lasted no more than forty-five minutes, and the defendant was conscious throughout. The defendant was able to converse in a normal voice. The state presented evidence that the defendant understood his rights and expressed a willingness to talk to police. The officers ceased their interrogation when the defendant indicated that he no longer wished to speak with them. The court also noted that the detectives received permission from a doctor to speak to the defendant. Id. at 172-173.
 {¶ 30} Here, Trooper Clark testified that hospital personnel directed her to Driesbaugh. Trooper Clark introduced herself, and, after confirming Driesbaugh's identity and her age, Mirandized her and then asked Driesbaugh for a statement, which appellant gave. Driesbaugh was conscious throughout the interview. Trooper Clark testified that appellant understood the questions asked, and that she was able to relate what had happened. Driesbaugh signed the statement after Trooper Clark transcribed it.
 {¶ 31} Nothing in the record indicates that Trooper Clark coerced the statement. While appellant was unconscious at the scene, she regained consciousness before being helped from the vehicle by Trooper Kuhn. She was conscious throughout the interview with Trooper Clark. Further, the record indicates that appellant's injuries were minor and she was released from the hospital the same day. She suffered nothing comparable to a gunshot wound to the chest with resultant spinal cord damage as did the Defendant in Jenkins. The trial court properly denied appellant's motion to suppress and her sixth assignment of error is without merit.
 {¶ 32} In assignments of error one through five, appellant challenges her convictions based on the sufficiency of the evidence and as being against the manifest weight of the evidence. Appellant's arguments are unpersuasive.
 {¶ 33} We note initially that appellant's sufficiency arguments are based primarily on the Ohio Supreme Court's holding in State v.Kulig (1974), 37 Ohio St.2d 157. Appellant erroneously relies on the following language from Kulig to support her sufficiency argument: "Circumstantial evidence relied upon to prove an essential element of a crime must be irreconcilable with any reasonable theory of an accused's innocence in order to support a finding of guilt." Id. at syllabus. Appellant goes so far as to assert that this is "the well settled law in Ohio." In fact, the Supreme Court of Ohio specifically overruled Kulig inState v. Jenks (1991), 61 Ohio St.3d 259. The court in Jenks held:
 {¶ 34} "Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof. When the state relies on circumstantial evidence to prove an essential element of the offense charged, there is no need for such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction. * * *." Id. at paragraph one of the syllabus.
 {¶ 35} Therefore, contrary to appellant's contention, we need not find the circumstantial evidence to be irreconcilable with any reasonable theory of innocence, in order to find sufficient evidence to support appellant's convictions.
 {¶ 36} A sufficiency argument tests whether the state has presented evidence on each element of the offense. State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at 13.
 {¶ 37} We must determine whether, viewing the probative evidence and inferences drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found proof of each element of the offense beyond a reasonable doubt. Id. This presents a question of law and the court is not permitted to weigh the evidence. Id. Applying these principles, we find sufficient evidence to sustain appellant's convictions.
 {¶ 38} Appellant initially argues that there was insufficient evidence to prove that she operated her vehicle while under the influence of alcohol. In the instant case, appellant admitted in her statement to Trooper Clark that she had consumed three to four beers and, more importantly admitted that she was under the influence of alcohol at the time of the collision. Trooper Kuhn also testified that appellant was incoherent, dazed and confused, had glassy, bloodshot eyes, and smelled of alcohol. Viewed in the light most favorable to the prosecution, this is sufficient evidence to establish beyond a reasonable doubt that appellant was under the influence of alcohol while operating her vehicle.
 {¶ 39} Appellant also argues that there was insufficient evidence of serious physical harm to sustain her conviction of aggravated vehicular assault. We disagree.
 {¶ 40} The aggravated vehicular assault statute in effect at the time of appellant's offense stated: "No person, while operating * * * a motor vehicle * * * shall recklessly cause serious physical harm to another person * * *. R.C. 2903.08, eff.7-1-96. R.C. 2901.01(A)(5) defined serious physical harm as:
 {¶ 41} "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
 {¶ 42} "(b) Any physical harm that carries a substantial risk of death;
 {¶ 43} "(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary substantial incapacity;
 {¶ 44} "(d) Any physical harm that involves some permanent disfigurement or that involve some temporary, serious disfigurement;
 {¶ 45} "(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."
 {¶ 46} Appellant premises her argument on the state's failure to present expert medical testimony to establish the nature and extent of Trooper Kuhn's injuries. Appellant essentially asks us to hold that, to establish the element of serious physical harm, the state must present expert medical testimony. Appellant does not cite any case law in support of her proposition and our research has not revealed any. In fact, the cases we have found on this issue have rejected appellant's argument, and properly so. See State v. Fahringer (May 11, 2000), 3rd Dist. No. 4-99-14, 2000 Ohio App. LEXIS 1982, (finding serious physical harm to support kidnapping conviction under R.C. 2905.01(A)(3), where the victim did not testify and the state did not present expert medical testimony); Statev. Hardaway (Oct. 31, 1991), 8th Dist. No. 59210, 1991 Ohio App. LEXIS 5238, (rejecting contention that state was required to introduce expert testimony as to harm to support violence specification pursuant to R.C.2929.11(D)); State v. Bell (Feb. 7, 1989), 10th Dist. No. 88AP-420, 1989 Ohio App. LEXIS 414, (victim's testimony sufficient to support finding of serious physical harm in conviction for felonious assault).
 {¶ 47} In the instant case, Trooper Kuhn testified that he was unable to return to work for twenty days after the accident. He testified that his arms and legs sporadically went numb and he would be unsteady on his feet. Trooper Kuhn testified that he was still experiencing these conditions at the time of trial, twenty-one months after the collision. Trooper Kuhn had not experienced any of these health problems prior to the accident. Trooper Kuhn missed an additional period of work from July 5, 2000 to September 19, 2000. Thus, at a minimum, the state established that Trooper Kuhn suffered physical harm that involved some temporary substantial incapacity. R.C. 2901.01(A)(5)(c). See, also, State v. Ray
(Sept. 8, 1997), 7th Dist. No. 96-BA-12, 1997 Ohio App. LEXIS 4049, (stating: "The standard of serious physical harm has been established through Ohio case law. Serious physical harm has consisted of something as minor as a one centimeter cut above the right eyebrow, State v.Edward (1992), 83 Ohio App.3d 357, * * *.") The state presented sufficient evidence to establish serious physical harm.
 {¶ 48} Appellant also challenges her mandatory prison sentence and mandatory, permanent, driver's license revocation. She contends that there was insufficient evidence to establish that she was operating her vehicle while under the influence of alcohol at the time she committed the offense of aggravated vehicular assault. For the reasons discussed above, we find that there was sufficient evidence to establish that Driesbaugh was under the influence at the time of the collision.
 {¶ 49} Appellant next argues that there was insufficient evidence to establish that she acted recklessly under R.C. 2903.08(A), eff. 7-1-96. This section provided in relevant part: "No person, while operating * * * a motor vehicle, * * * shall recklessly cause serious physical harm to another person * * *." R.C. 2901.22(C) stated:
 {¶ 50} "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."
 {¶ 51} We have previously held that evidence of driving under the influence is sufficient to establish the element of recklessly. State v.Daugert (June 29, 1990), 11th Dist. No. 89-L-14-091, 1990 Ohio App. LEXIS 2719, at 6-7. Here appellant admitted to being under the influence of alcohol at the time of the collision. Therefore, the state presented sufficient evidence to establish the element of "recklessly" beyond a reasonable doubt.
 {¶ 52} Appellant also contends that her convictions were against the manifest weight of the evidence. We disagree.
 {¶ 53} We may find that a verdict is against the manifest weight of the evidence even though legally sufficient evidence supports it.State v. Group, 2002 Ohio 7247, at ¶ 76, 98 Ohio St.3d 248. When we consider a manifest weight argument we review the entire record, weigh the evidence and reasonable inferences, and consider the credibility of witnesses. Id. at ¶ 77. We then determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction and order a new trial. Id. We should only exercise this discretionary power in those exceptional cases where the evidence weighs heavily against conviction. Id.
 {¶ 54} In her second assignment of error, appellant argues that her conviction for driving under the influence, and the specific finding that she was operating her motor vehicle while under the influence of alcohol, while committing the offense of aggravated vehicular assault, were against the manifest weight of the evidence. In support of this argument, appellant contends that there was no evidence of impaired driving, field sobriety tests, or evidence that appellant acted recklessly.
 {¶ 55} Initially, we note that the location of the vehicle may be prima facie evidence of erratic driving. See Niles v. Spelich (Mar. 4, 1994), 11th Dist. No. 93-T-4896, 1994 Ohio App. LEXIS 824, at 8; Statev. Leveque (Sept. 30, 1993), 11th Dist. No. 92-L-208, 1993 Ohio App. LEXIS 4744, at 7. In the instant case, appellant's vehicle ran off the road and collided with Trooper Kuhn's vehicle. Further, both Troopers Kuhn and Clark testified as to physical signs they observed on appellant that led them to believe appellant was under the influence of alcohol. Finally, appellant admitted that she had consumed three to four beers and that she was under the influence of alcohol.
 {¶ 56} Appellant, relying on State v. Finch (1985),24 Ohio App.3d 38, argues that merely appearing to be too drunk to drive is not an offense. Appellant's reliance on Finch is misplaced.
 {¶ 57} First, the issue addressed in Finch was probable cause to arrest. Here, appellant challenges her conviction based on the manifest weight of the evidence.
 {¶ 58} Second, we have refused to apply Finch to cases where the defendant has been involved in an accident. See, e.g., State v. McFadden
(Apr. 3, 1998), 11th Dist. No. 97-L-139, 1998 Ohio App. LEXIS 1425, at 7, (stating, "In reaching our conclusion, we are aware of the cases cited by appellant stating that the mere appearance of drunkenness (bloodshot eyes, slurred speech, flushed face, the odor of alcohol) is insufficient to constitute probable cause to arrest for driving under the influence. See, e.g., State v. Finch (1985), 24 Ohio App.3d 38, * * *. However, unlike the facts presented in Finch, the combination of factors listed above, including the observance of appellant's vehicle mired in the mud at an accident scene, provided sufficient information * * * to effectuate appellant's arrest for drunk driving.")
 {¶ 59} Third, the instant case is factually distinguishable fromFinch. There, the officer was notified that Finch had been involved in a fight, not an automobile accident. The officer went to the scene of the fight to investigate. As she arrived on the scene, Finch was driving away. The officer directed Finch to the side of the road. When the officer approached Finch's car she noticed that Finch exhibited many of the characteristics of someone who had been drinking heavily — bloodshot eyes, flushed face, and slurred speech. The officer removed Finch's keys from the car, thus, as the court of appeals found, placing him under arrest. Id. at 38-39. In spite of the fact that the officer had an opportunity to observe Finch's driving, she did not witness any erratic driving and there was no accident. Therefore, the court found that the officer lacked probable cause to arrest.
 {¶ 60} Here, appellant's vehicle left the road at high-speed and struck a parked state patrol vehicle. Trooper Kuhn watched all of this unfold in his mirror. Thus, he observed erratic driving.
 {¶ 61} While there may have been other causes of appellant's physical condition, i.e., bloodshot, glassy eyes, we cannot say that the trier of fact clearly lost its way when it determined that appellant was under the influence of alcohol and thus, the trial court's finding is not against the manifest weight of the evidence.
 {¶ 62} The trial court's determination that appellant caused serious physical harm was not against the manifest weight of the evidence. Trooper Kuhn testified to the extent of his injuries and the resultant, at least temporary, substantial incapacitation these injuries caused. He also testified that he had not experienced such symptoms before the accident.
 {¶ 63} Appellant challenges her mandatory sentence and mandatory license revocation as being against the manifest weight of the evidence. For the reasons set forth in our analysis of appellant's second assignment of error, we find that the trial court's finding that appellant was under the influence of alcohol while committing aggravated vehicular assault, was not against the manifest weight of the evidence. Therefore, the trial court did not err in imposing a mandatory prison sentence and mandatory, permanent, license revocation.
 {¶ 64} Finally, appellant contends that the trial court's finding that she acted recklessly is against the manifest weight of the evidence. Appellant admitted that she was under the influence of alcohol at the time of the collision. This established reckless conduct.Daugert, supra. Thus, we cannot say that the trial court's determination was against the manifest weight of the evidence.
 {¶ 65} For the foregoing reasons, appellant's assignments of error are without merit, and the judgment of the Portage County Common Pleas Court is affirmed.
Judgment affirmed.
DONALD R. FORD, P.J., and WILLIAM M. O'NEILL, J., concur.